UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
CHRISTOPHER ROSS,                  :
                                   :          11 Civ. 8542 (DLC)
                Plaintiff,         :
                                   :
          -v-                      :          OPINION & ORDER
                                   :
CORRECT CARE SOLUTIONS LLC; NEW    :
YORK CORRECT CARE SOLUTIONS        :
MEDICAL SERVICES PC; WESTCHESTER   :
COUNTY JAIL; ROBERT ASTORNIO,      :
WESTCHESTER COUNTY EXECUTIVE;      :
WANDA SMITHSON, DEPUTY             :
COMMISSIONER; DOCTOR PAUL ADLER;   :
MEDICAL LIAISON JUNE YOZZO; LICENSE:
PRACTITIONER BERNADETTE NELSON,    :
                                   :
                Defendants.        :
                                   :
-----------------------------------X

APPEARANCES:

For plaintiff:

Christopher Ross, pro se
95-A-8093
Greene Correctional Facility
P. O. Box 975
Coxsackie, NY 12051-0975

For County defendants:

Robert F. Meehan
Christine Lynne D'Alessio
Westchester County Attorney's Office
148 Martine Avenue
White Plains, NY 10601

1

For Correct Care defendants:

James C. Freeman
Kent Hazzard, LLP
111 Church Street
White Plains, NY 10601


DENISE COTE, District Judge:

Plaintiff Christopher Ross ("Ross"), proceeding pro se,

brings this action pursuant to 42 U.S.C. § 1983 for injunctive

relief, declaratory relief, and damages against defendants

Westchester County Jail ("Jail") County Executive Robert

Astorino ("Astorino"), Deputy Commissioner Wanda Smithson

("Smithson"), and Medical Liaison June Yozzo ("Yozzo")

(collectively, "County Defendants"), and against New York

Correct Care Solutions Medical Services P.C. ("NYCCS"), which

provides medical services for the jail, its parent company,

Correct Care Solutions, LLC ("Correct Care"), and two Correct

Care employees, Dr. Paul Adler ("Adler") and Nurse Bernadette

Nelson ("Nelson") (collectively, "Correct Care Defendants")

regarding the medical treatment he received while incarcerated

at the Jail.  Ross principally alleges that the defendants

failed to provide adequate medical care to treat his sleep

apnea.  The two sets of defendants have moved to dismiss the

complaint.  For the following reasons, the motion by the Correct

Care Defendants is granted.  The motion by the County Defendants is granted in part.


BACKGROUND

The following facts are as alleged in the complaint, as modified by the plaintiff's opposition to these motions to dismiss, and are assumed to be true.[1]  Upon arriving at the Jail on February 28, 2011, Ross informed the intake nurse that he suffers from cardiomyopathy, hypertension, and sleep apnea. Later that day, he met with defendant Nelson, at which time he explained that, due to his sleep apnea, he uses a continuous positive airway pressure ("CPAP")[2] machine on a regular basis when at home.  The plaintiff further informed Nelson that during a previous period of incarceration at the Jail, he had used an outdated bi-level positive airway pressure ("Bi-PAP") machine to

---

[1] In opposing the motions to dismiss, the plaintiff abandoned several of his claims and clarified other contentions.  By Order dated September 14, 2012, the Court provided the plaintiff an opportunity to amend the complaint or file opposition to the defendants' motions to dismiss.  The plaintiff did not file an amended complaint and chose instead to oppose the motions.  This Opinion considers both the opposition and complaint together. As a result, it will only discuss the abandoned claims briefly, and will include any supplemental or clarifying statements contained in the opposition.

[2] CPAP is a type of therapy, using a machine to help a person with obstructive sleep apnea to breath more easily during sleep. The CPAP machine increases air pressure in the throat so that the airway does not collapse when the individual breathes in.

treat his condition.[3]  According to Ross, Nelson wrote a note in his medical file that read:

> Spoke to [inmate] regarding sleep apnea.  States diagnosed 2006 after sleep studies and using CPAP machine.  States machine is at his home, but was staying in Connecticut. States able to sleep without CPAP.

The plaintiff was not given a CPAP machine at the time.  Ross claims that Nelson falsely wrote that Ross told her that he was able to sleep without a CPAP.  Ross does not appear to claim that the remaining portion of Nelson's medical record -- that his CPAP machine was at his home, but that he had been staying elsewhere in Connecticut -- is inaccurate.

On April 19, the plaintiff filed a medical grievance in which he complained that he had been denied access to medications and treatment for pain he suffered from a herniated disk and a nerve problem in his back.  The following day he met with Dr. Adler at the J-Block clinic.  Ross explained that he was in need of pain medicine.  Ross also requested that he be given a prescription for Amlopine -- a blood pressure medication -- and that he be permitted to use a CPAP machine.  Dr. Adler told the plaintiff, "Don't worry about the CPAP machine[;] we will worry about that later."

Following the examination by Dr. Adler, the plaintiff's April 19 medical grievance was marked "partially

---

[3] A Bi-PAP machine is similar to a CPAP machine.

substantiated/action requested granted."  On April 27, this finding was overturned by defendant Smithson.  The plaintiff sought to appeal this finding through an Article 78 proceeding. He later learned, on June 2, that his motion papers had never been received by the Westchester County Clerk.  After further inquiries, the plaintiff mailed the motion papers again.  He was informed on September 19 that they had been received.

On June 18, the plaintiff attempted to file a grievance complaining about the failure to provide him with a CPAP machine; the grievance was not accepted and returned to him. The plaintiff saw Dr. Adler on June 20, at which time he complained again about not receiving a CPAP machine.  Dr. Adler explained that he would need to verify that the machine was medically necessary.

On June 21, defendant Yozzo visited Ross in his cell to speak to him about his medical records.  Yozzo told Ross that he would not be given a CPAP machine because he liked "to sue" people.  This is apparently a reference to the action filed by Ross against the Jail and others on May 12, 2010 to complain principally about the defendants' failure to treat his sleep apnea.  See Ross v. Westchester County Jail, No. 10 Civ. 3937 (DLC), 2012 WL 86467 (S.D.N.Y. Jan. 11, 2012).  Yozzo stated in essence, "Oh you're the same guy that was in the SHU last year

with sleep apnea.  You're not going to get anything if I can help it since you like to sue people."

On June 27, Dr. Adler came to the plaintiff's cell block and explained that, according to Yozzo, during the plaintiff's prior period of incarceration at the Jail, there had been fourteen incidents of the plaintiff's "non-compliance with the CPAP machine."  Accordingly, Dr. Adler explained, the plaintiff would not be receiving a machine.  The plaintiff alleges that Dr. Adler fabricated the prior instances of "non-compliance" with the CPAP machine.  Dr. Adler attached a note to Ross' medical files indicating that during the plaintiff's previous period of incarceration he had slept soundly without the assistance of a CPAP machine on over ten occasions, that his weight had not changed materially since that time, and that the plaintiff's desire was to move to a single room in an air-conditioned cell block.  Based on these observations, Dr. Adler concluded that the use of a CPAP machine was "optional" and not "medically mandatory" for Ross.

The plaintiff filed a second grievance regarding the failure to afford him a CPAP machine on June 27 ("June 27 Grievance").  Three days later, he attempted to file a third grievance.  The third grievance was rejected on the ground that it duplicated the June 27 Grievance.  The plaintiff received an

answer to the June 27 Grievance on July 5.  The grievance was marked unsubstantiated due to the fact that, according to the answer, the plaintiff had informed medical staff upon his arrival at the facility that he: had not used his CPAP machine recently prior to being admitted, had been staying in Connecticut while his CPAP machine was at home in New York, and was able to sleep without the CPAP machine.  Nonetheless, Correct Care determined that it would provide the plaintiff a CPAP machine going forward.

On August 1, the plaintiff filed a grievance asserting that he continued to have difficulty breathing and was in need of a CPAP machine.  He also complained that Nelson had falsified his medical records at the time he was admitted.  The plaintiff filed another grievance regarding the alleged falsification of his medical records on August 8; this grievance was returned to him with an indication that it was too vague.

The plaintiff received a CPAP machine on January 11, 2012.[4] On February 13, Ross had a sleep study conducted to confirm that he does have sleep apnea and a CPAP machine is medically mandatory for his condition.

---

[4] January 11, 2012 is the day the Court issued its Opinion in the 2010 action filed by Ross.  Ross, 2012 WL 86467.  In that Opinion, all claims against the individual defendants were dismissed.  The sole claim that survived was the claim brought against Westchester County for its failure to provide Ross with treatment for sleep apnea for three months in 2009.  Id. at *10.

The plaintiff filed the complaint in this action on November 21, 2011.  An Order of January 6, 2012, stayed the case pending a decision in the above-referenced Article 78 proceeding.  The Article 78 proceeding resulted in an Opinion of March 2 denying the plaintiff's request for relief.

The County Defendants moved to dismiss the complaint on September 12, 2012, and the Correct Care Defendants moved to dismiss the complaint on September 13.  The plaintiff was given an opportunity to serve any amended pleading or opposition to the motion, but warned that he would have no further opportunity to amend the pleading to address the defects raised in the September 12 motion.  After several extensions, the plaintiff filed an opposition.

DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  Moreover, pleadings filed by pro se plaintiffs are to be construed liberally.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).  "The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims."  Ortiz v. McBride, 323 F.3d 191, 194 (2d Cir. 2003).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678.

A. Federal Deliberate Indifference Claims

The plaintiff asserts claims against individual defendants Nelson, Dr. Adler, and Yozzo for deliberate indifference to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights for their failure to provide him with a CPAP machine.[5]  "There are two elements to a claim of deliberate indifference to a serious medical condition: [t]he plaintiff

---

[5] Ross's opposition to these motions abandons his claims with respect to the treatment he received while incarcerated for back pain.

must show that [he] had a serious medical condition and that it
was met with deliberate indifference." Caiozzo v. Koreman, 581
F.3d 63, 72 (2d Cir. 2009) (citation omitted).  Deliberate
indifference is a mental state akin to recklessness, and is
measured using a subjective test that discerns whether the
defendant was "actually aware of an excessive risk to an
inmate's health or safety," id. at 69, and therefore "act[ed]
with a sufficiently culpable state of mind." Salahuddin v.
Goord, 467 F.3d 263, 280 (2d Cir. 2006).[6]

        "As the Supreme Court has noted, the prison official's duty
is only to provide reasonable care." Id. at 279 (citing Farmer
v. Brennan, 511 U.S. 825, 844-47 (1994)).  An inmate is not
entitled to treatment by every available medical alternative as
long as his treatment is reasonable. See Estelle v. Gamble, 429
U.S. 97, 107 (1976).  Furthermore, a "mere disagreement over the
proper treatment does not create a constitutional claim.  So
long as the treatment given is adequate, the fact that a
prisoner might prefer a different treatment does not give rise

---

[6] In his opposition to these motions, Ross asks the Court to
consider the U.S. Department of Justice Investigation Report
issues on November 19, 2009, regarding conditions at the Jail.
"In considering a motion to dismiss for failure to state a
claim, a district court must limit itself to the facts stated in
the complaint, documents attached to the complaint as exhibits
and documents incorporated by reference in the complaint."
Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 192 (2d Cir.
2006) (citation omitted).  Accordingly, the report will not be
considered in deciding this motion.

to an Eighth Amendment violation." <u>Hill v. Curcione</u>, 657 F.3d 116, 123 (2d Cir. 2011) (citation omitted).

The allegations in the complaint are not sufficient to state deliberate indifference claims against Nelson or Dr. Adler with respect to the failure to treat the plaintiff's sleep apnea. While Ross has adequately plead that he suffers from a serious medical condition,[7] he has not sufficiently alleged that either Nelson or Dr. Adler acted with a "sufficiently culpable state of mind." <u>Salahuddin</u>, 467 F.3d at 280. The mental state necessary to support a deliberate indifference claim "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." <u>Id</u>. This means that the prison official "must be subjectively aware that his conduct creates such a risk." <u>Id</u>. at 281.

The complaint does not contain sufficient facts to allege that either Nelson or Dr. Adler denied him access to a CPAP machine while actually aware of a substantial risk that serious harm could befall him as a result. Despite Ross's repeated insistence that he required the assistance of a CPAP machine, Ross does not dispute that he told Nelson upon his arrival at

---

[7] As this Court has previously held, sleep apnea can be life threatening and may therefore qualify as a serious medical condition. <u>See</u> <u>Ross</u>, 2012 WL 86467, at *5.

11

the Jail that he had been staying in Connecticut while his CPAP machine was elsewhere, at home.  Based on this statement, Nelson reasonably could have understood that he could sleep safely without a CPAP machine.  While Ross contends that he never told Nelson that he was "able to sleep without CPAP," that constitutes little more than a disagreement about the characterization of Ross's statements.  Having told Nelson, in effect, that he was not using his CPAP machine, Ross cannot premise his claim that Nelson acted with deliberate indifference to his severe medical needs on the fact that she interpreted his words to mean that he was able to sleep without the machine.

As for Dr. Adler, the complaint indicates that Dr. Adler initially chose to treat Ross's more acute problems, then indicated that he needed to determine whether Ross actually needed a CPAP machine, and within one week based his decision that a CPAP was "optional" for Ross on an assessment of Ross's medical history given the information available to him at the time.  That Ross believed that something more should have been done to treat his medical conditions amounts to a disagreement with a course of medical treatment, and must be dismissed.[8]  See Hill, 657 F.3d at 123.

---

[8] In his opposition to the motion to dismiss, Ross abandons his claim that Dr. Adler falsified medical records.  Instead, Ross asserts that defendant Yozzo advised Dr. Adler, apparently

By contrast, Ross's allegations are sufficient to state a claim for deliberate indifference against Yozzo.  According to the complaint, although she was informed about his sleep apnea, Yozzo deliberately refused to provide him with medical treatment for his sleep apnea on account of his prior complaint and lawsuits.

B. Supervisory and Municipal Liability for Federal Claims

The plaintiff also seeks to hold defendants Astorino and Smithson liable as to his claim of deliberate indifference in their supervisory capacities, along with Westchester County ("County"),[9] NYCCS, and Correct Care.  With the abandonment of plaintiff's claims related to his back pain, Ross's remaining allegations principally claim that these defendants failed appropriately to supervise subordinate officers at the Jail who did not provide Ross with a CPAP machine for eleven months to treat his sleep apnea.

It is well established that general respondeat superior liability does not exist under Section 1983.  Back v. Hastings

---

inaccurately, that on fourteen occasions in the prior years Ross was "not in compliance" with the use of the CPAP machine.  While the claims against Dr. Adler are being dismissed, the claims against Yozzo survive.

[9] Ross named the Jail as a defendant, but the Jail does not have a legal identity separate and apart from the County and, therefore, cannot be sued.  Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F.Supp.2d 408, 416 n.4.

on Hudson Union Free School Dist., 365 F.3d 107, 127 (2d Cir.
2004).  An individual supervisor can be held liable, however, if
the plaintiff establishes the "defendant's personal involvement
in the alleged constitutional deprivation."  Grullon v. City of
New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  Examples of such
personal involvement include directly participating in the
infraction, and creating a policy or custom under which
unconstitutional practices occurred, or allowing such a policy
or custom to continue.  See id. at 139.[10]  Likewise, Section 1983

_____

[10] In Hastings on Hudson, 365 F.3d 107, the Second Circuit held
that personal involvement may be shown by

> evidence that: (1) the defendant participated directly in
> the alleged constitutional violation, (2) the defendant,
> after being informed of the violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant
> created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent
> in supervising subordinates who committed the wrongful
> acts, or (5) the defendant exhibited deliberate
> indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring.

Id. at 127 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.
1995)).  The Supreme Court's decision in Iqbal, 556 U.S. 662,
which found that a supervisor can be held liable only "through
the official's own individual actions," id. at 676, arguably
casts doubt on the continued viability of some of the categories
set forth in Hastings on Hudson and Colon.  See Grullon, 720
F.3d at 139 (recognizing that Iqbal "may have heightened the
requirements for showing a supervisor's personal involvement
with respect to certain constitutional violations").  For the

14

"<u>extends</u> liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." <u>Okin v. Village of Cornwall-on-Hudson Police Dep't.</u>, 577 F.3d 415, 439 (2d Cir. 2009); <u>see</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978).

Ross's allegations of supervisory liability on his federal claims must be dismissed.  First, having found no deliberate indifference on the part of Dr. Adler or Nelson, the plaintiff's supervisory liability claims against their employer Correct Care are dismissed.  With respect to the County, nothing in the complaint suggests that Yozzo's pronouncement that she intended to deny Ross access to a CPAP machine was in any way a part of or otherwise related to a policy or custom of the County.  Nor does the complaint detail what knowledge or role, if any, defendants Astorino and Smithson had with respect to Yozzo's statement or any other aspect of the medical treatment Ross received for his sleep apnea.

---

purposes of this case, however, it is not necessary to explore this issue because the complaint fails to plead that Astorino and Smithson were personally involved under any of the <u>Hastings on Hudson</u> categories.

C. State Law Claims

The plaintiff also asserts state law claims of negligence, gross negligence, and negligent infliction of emotional distress against individual defendants Dr. Adler and Yozzo and a supervisory liability claim against the County.  The plaintiff's negligence claims are governed by New York's medical malpractice law.  "[T]o establish a claim of medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries."  Milano ex rel. Milano v. Freed, 64 F.3d 91, 95 (2d Cir. 1995) (citation omitted).  Gross negligence is adjudicated under the same standard, with the additional requirement that the defendants' conduct be shown to "evince[] a reckless disregard for the rights of others or smack[] of intentional wrongdoing." Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt., 692 F.3d 42, 61 (2d Cir. 2012) (citation omitted).  In order for the plaintiff to recover under a theory of negligent infliction of emotional distress in the absence of physical injury he must prove not only negligence, but also that he suffered psychological trauma resulting in substantial emotional harm. Armstrong ex rel. Armstrong v. Brookdale Univ. Hospital, 425 F.3d 126, 137 (2d Cir. 2005).  Subject to certain exceptions,

New York makes employers vicariously liable for the torts of their employees when acting within the scope of their employment, so long as the negligent or intentional tortious conduct "is generally foreseeable and a natural incident of the employment."  Horvath v. L & B Gardens, Inc., 932 N.Y.S.2d 184, 185 (App. Div. 2011) (citation omitted).  However, "liability will not attach for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business."  Id. (citation omitted).

As the Court has already concluded that the conduct that the plaintiff alleges as to Yozzo is sufficient to state a claim for deliberate indifference, it follows, a fortiori, that the plaintiff's allegations of medical malpractice and gross negligence are adequately pled in so far as they concern Yozzo's failure to treat his sleep apnea.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (allegations of deliberate indifference must rise above a mere showing of medical malpractice).  Although the complaint does not specifically indicate whether Yozzo's actions were part of her employment or a result of personal incentives, Yozzo went to Ross's cell block to discuss his medical records as the County's Medical Liaison. As a result, at this early stage in the proceedings, the

17

plaintiff's state law claims of medical malpractice and gross negligence as to the County are adequately pled as well.

By contrast, because nothing in the complaint suggests that the failure to treat the plaintiff's sleep apnea by Dr. Adler was a breach of the standard of care, the plaintiff's claims as to him, NYCCS, and Correct Care are dismissed. Moreover, the complaint does not allege that the plaintiff suffered lasting emotional harm as a result of the failure to treat his sleep apnea. Accordingly, the plaintiff's claim of negligent infliction of emotional distress is dismissed as well.

D. Section 1983 Retaliation

Finally, the plaintiff alleges that defendant Yozzo retaliated against him for filing grievances by denying him needed medical care. To establish a First Amendment claim of retaliation, a plaintiff must show:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). In the prison context, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Wrobel v. Cnty. of Erie, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted). "Otherwise the retaliatory act

is simply de minimis and therefore outside the ambit of
constitutional protection." Davis v. Goord, 320 F.3d 346, 353
(2d Cir. 2003) (citation omitted); see Wrobel, 692 F.3d at 31.
"[T]his objective test applies even where a particular plaintiff
was not himself subjectively deterred; that is, where he
continued to file grievances and lawsuits." Gill v. Pidlypchak,
389 F.3d 379, 381 (2d Cir. 2004).  When considering a prisoner's
retaliation claims, the court must bear in mind that "prisoners
may be required to tolerate more than average citizens, before a
retaliatory action taken against them is considered adverse."
Davis, 320 F.3d at 353 (citation omitted).

     It is undisputed that the plaintiff has satisfied this
first prong of a retaliation claim.  The First Amendment
protects prisoners from retaliation for the filing of grievances
and lawsuits.  Id. at 352-53.  Moreover, for the purposes of
this motion to dismiss, the plaintiff's allegations are
sufficient to satisfy the other two prongs of the retaliation
standard.  As noted, the plaintiff alleges that on June 32,
Yozzo told him, "Oh you're the same guy that was in the [Special
Housing Unit] last year with sleep apnea.  You're not going to
get anything if I can help it, since you like to sue people."
The plaintiff further alleges that Yozzo "interfered with
physician instructions and maliciously denied plaintiff medical

care and treatment," including the use of a CPAP machine to treat his sleep apnea.  It is hardly debatable that the denial of essential medical treatment is adverse action of the type that "would deter [a prisoner] of ordinary firmness from exercising his . . . constitutional rights."  Wrobel, 692 F.3d at 31.  Additionally, the alleged statement by defendant Yozzo provides the needed causal connection between the plaintiff's protected activity and the alleged adverse action.

Defendants suggest in their brief in support of dismissal that, by virtue of her position, defendant Yozzo "is incapable of denying medical treatment."  But this assertion rests on facts that are outside of the pleadings and is inconsistent with the plaintiff's assertion that Yozzo personally took steps to prevent him from obtaining medical treatment.  To the extent defendants argue that Yozzo's conduct is shielded by qualified immunity, a government official may be shielded from liability under the doctrine of qualified immunity "if h[er] conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights."  Reuland v. Hynes, 460 F.3d 409, 419 (2d Cir. 2006) (citation omitted).  For the reasons set out above, that argument is rejected.  The defendants may renew their application under this affirmative defense at the time of

summary judgment practice if they believe the factual record supports it.

CONCLUSION

The Correct Care Defendants' September 13, 2012 motion is granted in its entirety.  The County Defendants' September 12, 2012 motion is denied as to Ross's deliberate indifference and retaliation claims against Yozzo, and state law medical malpractice and gross negligence claims against Yozzo and the County.  The County Defendants' motion is granted in all other respects.  The Clerk of Court will amend the caption to add Westchester County and remove Westchester County Jail.

SO ORDERED:

Dated:    New York, New York
          September 13, 2013

                    _____
                              DENISE COTE
                    United States District Judge

21

COPIES MAILED TO:

Christopher Ross
#95-A-8093
Greene Correctional Facility
P. O. Box 975
Coxsackie, NY 12051-0975